UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SHELLBIRD, INC., | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:09-cv-1271-SEB-DML |
| | ) | |
| DAN GROSSMAN, MAUREEN | ) | |
| GROSSMAN, and STONE RIDGE | ) | |
| ARABIANS, LLC, | ) | |
|     Defendants. | ) | |
| | ) | |
| STONE RIDGE ARABIANS, LLC, | ) | |
|     Counterclaim Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SHELLBIRD, INC., MICHELE PFEIFER, | ) | |
| and DAVID HALSCH, | ) | |
|     Counterclaim Defendants. | ) | |

**ORDER DENYING DEFENDANTS' AND COUNTER-DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT**

This lawsuit centers around a contract for the purchase of an Arabian horse named Valentino. Plaintiff Shellbird, Inc. ("Shellbird") originally brought claims against Defendants Stone Ridge Arabians, LLC ("Stone Ridge") and its members, Defendants Dan and Maureen Grossman, for breach of contract, unjust enrichment, and negligent misrepresentation. Then, Stone Ridge brought counterclaims against Shellbird and Michele Pfeifer and David Halsch, Shellbird's President and Chief Financial Officer, for breach of contract and a declaratory judgment that Stone Ridge is the sole owner of

Valentino.

Defendants' Second Motion for Summary Judgment [Docket No. 82] currently before the Court follows the Order issued in response to Defendants' previous Motion for Summary Judgment. In that entry, we dismissed Plaintiff's claims for unjust enrichment and negligent misrepresentation. [Docket 80]. We denied that motion, however, with regard to the breach of contract claim, which is now before us and the subject of the instant motion. For the reasons detailed below, Defendants' motion is <u>DENIED</u>.[1]

Counter-Defendants Michele Pfeifer and David Halsch have also filed a Motion for Summary Judgment [Docket No. 89] with regard to the breach of contract counterclaim against them. For the reasons discussed below, Counter-Defendants' motion is also <u>DENIED</u>.

### **Factual Background**[2]

In February 2008, Shellbird and its President and Chief Financial Officer, Michele Pfeifer and David Halsch, entered into negotiations to purchase Valentino from Stone Ridge and its members, Dan and Maureen Grossman. The original agreement between the parties was signed on February 23, 2008 and stated a total purchase price for Valentino of $4,500,000. The agreement specified a nineteen month schedule of payments set to end with a final payment covering the balance of $2,550,000 on the last

---

[1] Defendants also filed a Request for Hearing on their Second Motion for Summary Judgment. [Docket No. 85]. Because we are able to reach our decision based on the parties' written submissions, such a hearing is unnecessary and Defendants request is <u>DENIED</u>.

[2] The factual background of the parties' dispute is fully laid out in this Court's entry on Defendants' previous motion for summary judgment. [Docket. No. 80]. Thus, we include here only those facts with particular relevance to the instant Motions.

month of the payment period.

The agreement stated the buyer "is to receive all outstanding breeding receivables on the horse DA Valentino on the previous breeding rights sold to the horse DA Valentino" as well as all future breeding rights. In the Court's previous Order, we held that there was ambiguity as to what "all" outstanding breeding receivables constituted. Shellbird has maintained that it was told by Mr. David Boggs, Valentino's trainer and an alleged agent of Stone Ridge, that the amount of those outstanding breeding receivables was approximately $440,000.[3] Now, Stone Ridge has produced evidence to show that the amount of the outstanding breeding receivables was $212,200 and that by September 23, 2009, which was the date when Shellbird refused to make further payments, Shellbird had received $65,950. Stone Ridge asserts that the $65,950 constituted all of the income received by Midwest from Valentino's outstanding breeding receivables from February 23, 2008 until September 23, 2009 (leaving $146,250 to be paid and collected).[4] Somers Aff. ¶¶ 7-10.

At some point after the original agreement was signed, a second version of the agreement was executed. The revision to the second agreement consisted only of the

---

[3]Mr. Boggs was an employee of Midwest Station II, Inc. ("Midwest). According to Shellbird's Amended Complaint, Midwest was a breeding, training, and marketing facility for Arabian horses that facilitated negotiations between the parties to this lawsuit. Am. Compl. ¶ 8.

[4]Outstanding breeding receivables are receivables for breeding rights that have been reserved by customers by payment of an initial deposit. The receivable is equal to the amount the customer pays at the time of the breeding, not including the previously-paid deposit. There is no deadline by which customers must exercise their right to purchase breedings. Thus, there is no precise way to measure the receivables that a stallion may bring in over the course of his lifetime.

addition of a provision specifying that Valentino would remain in the care, custody, and control of Midwest until the entire contract was paid in full. Only David Halsch's signature appears in the "Buyer's signature" portion of the second agreement, making it different from the original agreement, which bears Pfeifer's signature as well, along with the designation of "President" following Pfeifer's name.

## Legal Analysis

### I. Standard of Review

In considering a motion for summary judgment, all facts and reasonable inferences must be construed in favor of the non-moving party. Magin v. Monsanto Co., 420 F.3d 679, 686 (7th Cir. 2005). We do not evaluate the weight of the evidence, judge the credibility of witnesses or determine the ultimate truth of the matter; rather, we determine whether there exists a genuine issue of triable fact. Anderson v. Liberty Lobby, 477 U.S. 242, 245-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Magin, 420 F.3d at 686 (citing Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

The moving party bears the initial burden of demonstrating that these requirements have been met; it may discharge this responsibility by showing "that there is an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 323. To

overcome a motion for summary judgment, the non-moving party must come forward with specific facts demonstrating that there is a genuine issue for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement.  Anderson, 477 U.S. at 251-52.  The nonmoving party must show that there is evidence upon which a jury reasonably could find for the plaintiff.  Id.  If it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish its case, summary judgment is not only appropriate, but also required.  See Celotex, 477 U.S. at 322.

**II.     Discussion Regarding Defendants' Second Motion for Summary Judgment**

As explained above, we denied Defendants' previous motion for summary judgment with regard to Plaintiff's breach of contract claim because we found the contract between the parties ambiguous as to the meaning of "all outstanding breeding receivables."  As we explained, because "the Agreement does not include a monetary value of 'all outstanding breeding receivables' or otherwise define the term 'all', we find that the contract is incomplete and that extrinsic evidence is therefore admissible to aid the Court in understanding and explaining its meaning."  ShellBird, Inc. v. Grossman et. al., 2010 U.S. Dist. LEXIS 74742, at *12 (S.D. Ind. July 23, 2010).  The extrinsic evidence referenced was Shellbird's allegation that it had been informed by Stone Ridge's alleged agent, Mr. David Boggs, that the outstanding breeding receivables totaled

approximately $440,000. Halsch Dep. at 57-58, 62; Halsch Dep. Ex. 4. We found that evidence, in conjunction with the testimony of Halsch that Shellbird "did not receive anything close to that amount of receivables," sufficient to create a genuine issue of material fact with regard to Defendants' breach. At the time of our previous decision, Stone Ridge had not refuted the evidence offered by Shellbird nor had it presented any other evidence to establish the amount Shellbird was to receive pursuant to the "all outstanding breeding receivables" term in the contract.

In this Second Motion for Summary Judgment, Stone Ridge asks that we reconsider our previous decision in light of evidence which they argue establishes that Shellbird received all outstanding breeding receivables owed to it under the contract. Specifically, Defendants have proffered the testimony of Jacqueline Myran-Somers, Senior Accountant for Midwest, who testified by affidavit that as of February 23, 2008, the date the contract at issue was executed, Valentino's outstanding breeding receivables totaled $212,200. Somers Aff. ¶ 7. Somers further testified that Shellbird received $65,950, which constituted all of the income received by Midwest from Valentino's outstanding breeding receivables from February 23, 2008 until September 23, 2009 (leaving $146,250 to be paid and collected). Somers Aff. ¶¶ 8-10. Defendants have also proffered a Midwest accounting record that they contend shows the Grossmans' receipt of these amounts. Somers Aff. Ex. 1.

Shellbird's Response offers no new evidence and does not challenge the truthfulness of Somers's testimony but rather maintains that the $440,000 amount was quoted to them by Mr. Boggs and that it should be up to the trier of fact to weigh the

credibility of both parties' evidence regarding the value of Valentino's outstanding breeding receivables. With some hesitance, we agree with Shellbird on this point.

Shellbird has proffered evidence that the value of the outstanding breeding receivables was $440,000. Defendants have now come forward with accounting records showing that that amount was $212,200 and that the available portion of that amount had been paid to Shellbird by the time they refused to make any additional payments. Although we are hard-pressed to foresee how Shellbird will attempt to challenge the veracity of the Midwest accounting records (especially in light of the fact that to date they have never done so), it is not the function of the Court at the summary judgment stage to compare the parties' evidence or to judge credibility. Thus, Defendants' Second Motion for Summary Judgment is DENIED.

### III. Discussion Regarding Counter-Defendants' Motion for Summary Judgment

In their Motion for Summary Judgment, Counter-Defendants Michele Pfeifer and David Halsch have asserted that they were both acting as agents on behalf of Shellbird and, thus, should not be held personally liable for any breach of contract.[5] In support of this assertion, they cite the general rule that officers of a corporation are not liable for corporate debts. See Haas v. Harris, 347 N.W. 2d 838, 839-40 (Minn. Ct. App. 1984). In response, Stone Ridge points out that, in addition to Shellbird, both Pfeifer and Halsch's names are included in the "Buyer" portion of the agreement. Thus, Stone Ridge argues

---

[5] Counter Defendants' request is somewhat curious, given their claims against Dan and Maureen Grossman in their individual capacities.

that to give effect to this term, as required by Minnesota law, the Court must deem Pfiefer and Halsch to be parties to the contract in their individual capacities. Furthermore, Stone Ridge argues that the fact that Pfeifer borrowed money in her individual capacity to make the payments pursuant to the contract shows that she was a party to the contract.

We agree with Stone Ridge that there is a genuine issue of material fact with regard to whether Pfeifer and Halsch were acting only as Shellbird's agents or as parties to the governing contract. It is true, as the Counter-Defendants point out, that "[u]nder traditional principles of agency law, a person making or purporting to make a contract with another as an agent for a disclosed principal does not become a party to the contract." Haas, 347 N.W. 2d at 839-40 (citing Restatement (2d) Agency, § 320 (1958); Kost v. Peterson,193 N.W.2d 291 (1971)). However, beyond referencing the fact that Pfeifer included the title "President" in executing the original agreement, Counter-Defendants offer no evidence to support their statement that Shellbird was a disclosed principal at the time the agreements were signed. In addition, the fact that Pfeifer and Halsch were expressly named as "Buyers" in the contract suggests that they were contracting in their personal capacities. Counter-Defendants have failed establish that there is no genuine issue of material fact with regard to Stone Ridge's breach of contract counterclaim. Accordingly, their Motion for Summary Judgment is <u>DENIED</u>.

## **Conclusion**

For the reasons discussed in this entry, Defendants' Second Motion for Summary Judgment and Counter Defendants' Motion for Summary Judgment are both hereby

DENIED.

　　　IT IS SO ORDERED.


Date: _____12/22/2010_____　　　　　　　_Sarah Evans Barker_____
　　　　　　　　　　　　　　　　　　　　　　　　　　SARAH EVANS BARKER, JUDGE
　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Court
　　　　　　　　　　　　　　　　　　　　　　　　　　Southern District of Indiana

Copies to:

Amos S Cohen
MALLOR GRODNER LLP
acohen@lawmg.net

Geoffrey Mitchell Grodner
MALLOR CLENDENING GRODNER & BOHRER
gmgrodne@lawmg.com

Bradley Kim Thomas
THOMAS & HARDY LLP
brad@thomaslawfirmpc.com